IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **RANDALL LEE MAYS,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 3:22-00319 |
| **ADMINISTRATOR CARL ALDRIDGE,** *et al.*, | ) |
| **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On August 4, 2022, Plaintiff, acting *pro se*,[1] filed his Application to Proceed Without Prepayment of Fees or Costs (Document No. 1) and Complaint for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Document No. 2). In his Complaint, Plaintiff names the following as Defendants: (1) Western Regional Jail; (2) Admin. Aldridge; and (3) Major Fleming. (Document No. 2.) Plaintiff alleges that he was severely beaten by inmate gang members during his confinement at the Western Regional Jail ("WRJ") on August 15, 2020. (Id.) Plaintiff states as follows: "I was beaten. I was stripped down and all my clothes were taken off. They held me down and beat me. They took turns holding my head up so they could put their d*cks on my face, and force me to hold their d*cks in my hand while others stood over me and rubbed their d*cks on my body and over my a**." (Id.) Plaintiff explains that the beating began around 5:30 p.m. and lasted for hours. (Id.) Plaintiff alleges he passed out from "blood loss." (Id.) Plaintiff states that around 10:50 p.m., an officer came into the pod and announced lockdown. (Id.) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

claims that he approached the officer and requested help, but the officer "grabbed [Plaintiff] by the shirt and put [him] back into the cell." (Id.) Plaintiff states that the left side of his nose was severely cut and was hanging off his face. (Id.) Plaintiff asserts that he "fell on the floor, and the roommates pushed the button to get [him] help because the people that attacked [Plaintiff] were no longer in the room." (Id.) Plaintiff alleges that Tower Officer Z. Priest answered the call and told them it wasn't his problem. (Id.) Plaintiff claims that his cellmates continued to press the button requesting help, and the Tower Officer finally said he would "look into it." (Id.) Plaintiff complains that it wasn't until approximately 12:24 a.m. that a nurse was called to evaluate him. (Id.) Plaintiff acknowledges that the nurse "immediately took [him] up the hallway to medical away from the situation." (Id.) Plaintiff further acknowledges that he was transported to Saint Mary's Medical Center where he was informed that he had a cracked orbital lobe, "needed sinus reconstruction, nasal repair, and plastic surgery to have damage fixed." (Id.) Plaintiff alleges that after he received stitches to repair his face and nose, Plaintiff was returned to the jail between 7:00 a.m. to 7:45 a.m. on August 16, 2020. (Id.)

Plaintiff complains that he was placed in Pod B-6, Cell # 1, without a mat, blanket, or change of clothing. (Id.) Plaintiff states that he was not provided a breakfast tray. (Id.) Plaintiff states that he pressed the call button, but no officer responded. (Id.) Plaintiff acknowledges that around 12:20 p.m. to 1:30 p.m., Officer Workman came into the pod an apologized because he was not notified Plaintiff was placed in the pod. (Id.) Plaintiff states that between 7:30 p.m. to 8:30 p.m., Captain Reid entered the cell to interview Plaintiff regarding the attack. (Id.) Plaintiff again complained that he was not provided with a mat, blanket, or change of clothes. (Id.) Officer Workman advised Plaintiff that he would "handle it" and CO Scheiling and Stepp later entered Plaintiff's pod. (Id.) Plaintiff acknowledges that CO Stepp went to get his mattress from Pod B-8.

(Id.) Plaintiff then states that the nurse and Officer Scheiling came by for "med pass," and the nurse advised Officer Scheiling that stitches had come out of Plaintiff's face and he would need to return to the hospital. (Id.) Plaintiff alleges that Officer Scheiling informed Plaintiff he would not be returned to the hospital until Plaintiff changed his bloody clothing. (Id.) Plaintiff acknowledges that Officer Scheiling got him a change of clothes and he was then transported back to the hospital by Officers Steep and Williamson. (Id.) Plaintiff asserts that he was returned to WRJ between 6:30 a.m. to 7:30 a.m. on August 17, 2020, and placed in Pod C-1, Cell # 9. (Id.) Plaintiff complains that he was not provided with a mat or blanket until approximately 3;20 p.m. to 4:30 p.m. on August 21, 2020. (Id.)

Plaintiff alleges that the first week of September 2020, Officer Ackers informed Plaintiff he was being moved back to Pod B-8. (Id.) Plaintiff states that he informed Officer Ackers that his life would be in danger in that population, and Officer Ackers placed Plaintiff in Pod A-7, Cell # 4. (Id.) Plaintiff states that there were five to ten inmates in this Pod, so Officer Ackers then moved Plaintiff to Pod A-5, Cell # 3. (Id.) Plaintiff states he remained in this cell until the second week of September 2020, when Officer Ackers again came and informed Plaintiff that he was being placed in Pod B-8. (Id.) Plaintiff states that he told Officer Ackers he would not go, and Officer Ackers "chained [Plaintiff] like a dog to the table." (Id.) Plaintiff acknowledges that when Officer Robinson saw this, he stated "not on my watch, and told him no way would he allow [Plaintiff] to be done like that at all." (Id.) Later that day, Plaintiff alleges that Captain Reid inquired where Plaintiff believed he would be safe and Plaintiff advised "back down on B-7 quarantine." (Id.) Plaintiff acknowledges that he was placed in B-7. (Id.) Plaintiff alleges that he remained in B-7 until his released on bond on October 2, 2020. (Id.)

Plaintiff states that he was again incarcerated on August 2, 2021. (Id.) Plaintiff complains

3

that he was placed in Pod C-4 "where 3 of the people that did the attack" were located. (Id.) Plaintiff indicates that he notified staff of the foregoing, and Captain Reid placed Plaintiff in Pod C-2 for his safety. (Id.) Plaintiff alleges that around the end of September 2021, Plaintiff was moved to Pod A-6, segregation. (Id.) Plaintiff states that a couple of days after being placed in Pod A-6, Plaintiff could not see out of the left eye because it was "highly infected." (Id.) Plaintiff alleges that he "laid in pain and not able to see until the following Monday at which point [Plaintiff] was seen by Dr. Martin." (Id.) Plaintiff contends that Dr. Martin immediately sent him to St. Mary's Medical Center. (Id.) Plaintiff states that the ER doctor prescribed eye drops and a gel for his eye to be applied four to five times a day. (Id.) Upon returning to MOCC, Plaintiff was placed in medical M-5. (Id.) Plaintiff states that while he was in medical, he learned that there was a "stab on sight" for him. (Id.) Plaintiff states he was then moved to M-2, but he still was not provided with his eye drops. (Id.) Plaintiff, however, acknowledges that Nurses Josh, Emily, Amber, Autumn, and Mandy were all trying to get his eye drops. (Id.) Plaintiff complains that on November 3, 2021, the doctor was approaching Plaintiff's door to check on Plaintiff and Nurse Regina Bryant "stopped him and told him [Plaintiff] was not to have the phone, was segregation, and was not to have anything at all." (Id.) Plaintiff states that Nurse Bryant informed the doctor that "she would fix [Plaintiff] soon, when [he] woke up." (Id.) Thus, Plaintiff alleges that Nurse Bryant prevented the doctor from performing his "duties." (Id.) Plaintiff acknowledges that he did not see or hear the foregoing because he was asleep, but this information was provided to Plaintiff by Officer Stafford. (Id.) Plaintiff further states that Officer Stafford informed Plaintiff that Nurse Bryant was talking to Nurse Melissa about having Plaintiff "cleared" and moved down the hallway. (Id.) Officer Stafford informed Plaintiff that Nurse Bryant asked Nurse Melissa to "cover for her if things ever came up that [Plaintiff's] eye drops came in but she was going to stop them, and

4

Melissa agreed." (Id.) Plaintiff alleges that Officer Stafford told him that Nurse Bryant was "dead set on making sure [Plaintiff] was put down the hallway to have something happen to [him] at all costs." (Id.)

On November 5, 2021, Plaintiff states that Officer Cook moved him from medical to Pod B-6, Cell # 8. (Id.) Once Officer Cook left the pod, Plaintiff states that he was immediately approached and threatened by six inmates. (Id.) Plaintiff acknowledges that Officer Racer was in the tower and announced that the inmates exit the room and if anyone touched Plaintiff they would be "charged." (Id.) Officer Racer instructed Plaintiff to lock his cell door and wait for Officer Cook to remove him from the pod. (Id.) Plaintiff acknowledges that was removed from Pod B-6 and placed in Pod C-2, Cell # 1. (Id.) Plaintiff alleges that he remained there until his roommate started asking Plaintiff why "Officers Brent, Cook, and others were asking him to f*ck [Plaintiff] up for the DMI and Odinist gang members." (Id.) Plaintiff states that he was then moved back to segregation for his safety. (Id.) Plaintiff further contends that Officers Prater and Carter have assisted the gang members in their attempt to harm Plaintiff. (Id.)

By Order entered on August 5, 2022, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs and directed the Clerk to issue process for the named Defendants. (Document No. 4.) On December 8, 2022, Plaintiff filed his First Amended Complaint naming the following as Defendants: (1) Admin. Aldridge; (2) Major Fleming; (3) Counselor Stinson, Stevens Center; (4) Officer Zach Priest, WRJ; (5) Officer John Doe; (6) John Doe, Correctional Officer in Tower; (7) Correctional Officer Scheiling; (8) Officer in C-Pod Tower on Saturday, Aug. 17, 2020; (9) Correctional Officer Williamson; (10) Correctional Officer Ackers; (11) Correctional Officer Cook; (12) Nurse Regina Bryant; (13) Nurse Melissa; (14) Correctional Officer Brent; (15) Correctional Officer Carter; (16)

Correctional Officer Petticrew; (17) Correctional Officer Gray, Northern Correctional Center; (18) Correctional Officer Counselor Cox, Northern Correctional Center; (19) Counselor Heather Timmins, Northern Correctional Center; and (20) DCR Commissioner Betsy Jividen. (Document No. 23.) In his Amended Complaint, Plaintiff clarified his allegations against each Defendant.

On December 19, 2022, Defendants Aldridge and Fleming filed their Answer. (Document No. 31.) By Order entered on December 20, 2022, Judge Eifert construed Plaintiff's First Amended Complaint as Motion to Amend Complaint. (Document No. 32.) To the extent Plaintiff requested permission to amend to supplement his factual allegations against Defendants Aldridge and Fleming, Judge Eifert granted the Motion. (Id.) To the extent Plaintiff excluded WRJ in his First Amended Complaint, Judge Eifert directed that the Clerk terminate WRJ as a Defendant. (Id.) To the extent Plaintiff requested permission to add Officer Zach Priest, Officer John Doe, John Doe, Correctional Officer Scheiling, Officer C-Pod Tower, Correctional Officer Williamson, Correctional Officer Ackers, Correctional Officer Cook, Nurse Regina Bryant, Nurse Melissa, Correctional Officer Brent, Correctional Officer Carter, Correctional Officer Petticrew, and DCR Commissioner Betsey Jividen, Judge Eifert granted his Motion and directed the Clerk to issue process.[2] To the extent Plaintiff requested permission to amend to include Counselor Stinson at the Stevens Center, Correctional Officer Gary at the Northern Correctional Center, Counselor Cox at the Northern Correctional Center, and Counselor Heather Timmins at the Northern Correctional Center, Judge Eifert denied his Motion. (Id.) On January 17, 2023, Defendant Bryant filed a Motion for Extension to Time to File Answer and Defendant Petticrew filed his Answer.

---

[2] Judge Eifert did not direct the service of Officer John Doe, John Doe, and Officer C-Pod Tower. Plaintiff was notified that it was his responsibility to identify these individuals by their names and failure to do so within a reasonable time would likely result in dismissal of these individuals. (Document No. 32.)

(Document Nos. 54 and 58.) By Order entered on January 17, 2023, the above matter was transferred to the undersigned for total pretrial management and submission of proposed findings of facts and recommendation for disposition. (Document Nos. 56 and 57.) By Order entered on January 18, 2023, the undersigned granted Defendant Bryant's Motion for Extension of Time. (Document No. 59.)

On January 31, 2023, Defendant Bryant filed her Motion to Dismiss for Failure to State Claim and Alternative Motion for Summary Judgment and Memorandum in Support. (Document Nos. 60 and 61.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 1, 2023, advising him of the right to file a response to Defendant Bryant's Motion to Dismiss for Failure to State Claim and Alternative Motion for Summary Judgment by March 1, 2023. (Document No. 62.) By Order entered on February 9, 2023, the undersigned directed Plaintiff to provide an updated address for "Nurse Melissa" by March 10, 2023, after noting that the docket sheet revealed that the Summons for this defendant had been returned unexecuted by the United States Marshals Service ("USMS") (Document No. 64). (Document No. 65.) On February 14, 2023, Defendant Brent and Carter filed their Answer. (Document No. 67.) On March 2, 2023, Defendant Ackers filed his Answer. (Document No. 74.) By Order entered on March 3, 2023, the undersigned directed Plaintiff to provide an updated address for C.O. Cook, C.O. Williamson, C.O. Scheiling, Betsy Jividen, and Zack Priest by April 3, 2023, after noting that the docket sheet revealed that the Summonses for these defendants had been returned unexecuted by the USMS ((Document Nos. 48 – 52). (Document No. 75.)

On June 7, 2023, Plaintiff filed a Motion to Compel Evidence. (Document No. 84.) By Proposed Findings and Recommendation ("PF&R") entered on June 8, 2023, the undersigned recommended that Defendant Bryant's Motion to Dismiss for Failure to State Claim and

Alternative Motion for Summary Judgment (Document No. 60) be granted and the matter referred back to the undersigned for further proceedings as to the remaining Defendants. (Document No. 86.) On June 26, 2023, Defendants Aldridge, Fleming, Ackers, Brent, Carter, Petticrew, and Bryant filed Responses in Opposition to Plaintiff's Motion to Compel. (Document Nos. 87 and 88.) By Memorandum Opinion and Order entered on June 28, 2023, United States District Judge Robert C. Chambers adopted the undersigned's PF&R and granted Defendant Bryant's Motion to Dismiss for Failure to State Claim and Alternative Motion for Summary Judgment (Document No. 60). (Document No. 90.)

On July 19, 2023, Defendants Aldridge, Fleming, Ackers, Brent, Carter, and Petticrew filed a Motion for Summary Judgment and Memorandum in Support. (Document Nos. 92 and 93.) Notice pursuant to Roseboro, was issued to Plaintiff on July 21, 2023, advising him of the right to file a response to Defendants Aldridge, Fleming, Ackers, Brent, Carter, and Petticrew's Motion for Summary Judgment by March 1, 2023. (Document No. 94.) On July 26, 2023, Plaintiff filed his "Answer to Defendants' Summary Judgment." (Document No. 95.) By Order entered on August 9, 2023, the undersigned denied Plaintiff's Motion to Compel Evidence. (Document No. 99.) On August 14, 2023, Plaintiff filed his "Objection for Defendants' Motion for Summary Judgment." (Document No. 100.) By PF&R entered on October 18, 2023, the undersigned recommended that the District Court grant Defendants Aldridge, Fleming, Ackers, Brent, Carter, and Petticrew's Motion for Summary Judgment and refer the matter back to the undersigned for further proceedings concerning the remaining Defendants. (Document No. 105.) Plaintiff failed to file Objections. By Memorandum and Order entered on November 27, 2023, District Judge Chambers adopted the undersigned's PF&R and granted Defendants Aldridge, Fleming, Ackers, Brent, Carter, and Petticrew's Motion for Summary Judgment. (Document No. 107.)

**DISCUSSION**

**1.** **Lack of Service:**

The undersigned finds that Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, Commissioner Jividen, Officer John Doe, CO John Doe, and Officer C-Pod Tower should be dismissed due to the lack of service. Although officers of the Court are charged with *assisting* the Plaintiff with service of process under 28 U.S.C. § 1915(d) due to his *in forma pauperis* status, neither the Court nor the USMS, are required to be *advocates* for the *pro se* Plaintiff. The Court has no responsibility to continue to search for the location of any unserved Defendant for the purpose of perfecting service of process for the Plaintiff. In Skaggs v. Clark, 2015 WL 269154 (S.D.W.Va. Jan. 21, 2015), District Judge Chambers stated as follows:

> Notwithstanding the difficulties faced by an incarcerated plaintiff, it is not yet, and cannot become, the role of the courts to track down defendants on behalf of incarcerated plaintiffs. At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made. Only upon provision of such information – which is absent here – can the courts execute services.

Skaggs v. Clark, 2015 WL 269154, * 3 (S.D.W.Va. Jan. 21, 2015); also see Ray v. Pursell, 2017 WL 3707584 (S.D.W.Va. June 23, 2017)(same). The Court diligently attempted to effect service upon Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, and Commissioner Jividen based upon the information provided by Plaintiff. (Document Nos. 33, 34, 35, 37, 39, 43.) The information provided by Plaintiff, however, was inadequate to effect service. (Document Nos. 48 – 52, 64.) By Order entered on February 9, 2023, the undersigned directed Plaintiff to provide an updated address for "Nurse Melissa" by March 10, 2023, after noting that the Summons for this defendant had been returned unexecuted by the USMS (Document No. 64). (Document No. 65.) The undersigned further notified Plaintiff of the following:

> Failure of Plaintiff to provide the Court with an updated address for the above

> Defendant by March 10, 2023, will result in a recommendation of dismissal of this matter without prejudice as to the above-named Defendant pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Id.) By Order entered on March 3, 2023, the undersigned further directed Plaintiff to provide an updated address for C.O. Cook, C.O. Williamson, C.O. Scheiling, Betsy Jividen, and Zack Priest by April 3, 2023, after noting that the Summonses for these defendants had been returned unexecuted by the USMS (Document Nos. 48 – 52). (Document No. 75.) The undersigned again notified Plaintiff as follows:

> Failure of Plaintiff to provide the Court with an updated address for the above Defendants by April 3, 2023, will result in a recommendation of dismissal of this matter without prejudice as to the above-named Defendants pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Id.) Plaintiff completely failed to provide the Court with any updated addresses for purposes of service of process concerning Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, and Commissioner Jividen. As to Officer John Doe, CO John Doe, and Officer C-Pod Tower, Judge Eifert notified Plaintiff that it was his responsibility to identify these individuals by their names and failure to do so within a reasonable time would likely result in dismissal of these individuals. (Document No. 32.) Plaintiff failed to provide the Court with any further identifying information or an address for service of process concerning Officer John Doe, CO John Doe, and Officer C-Pod. If a defendant or his authorize representative is not served, Plaintiff cannot prevail on his claim against that person. It is Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, Commissioner

10

Jividen, Officer John Doe, CO John Doe, and Officer C-Pod Tower be dismissed without prejudice due to the lack of service.

2.      **Failure to Prosecute:**

Notwithstanding the foregoing, the undersigned further finds that Plaintiff's claims against Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, Commissioner Jividen, Officer John Doe, CO John Doe, and Officer C-Pod Tower should be dismissed for failure to prosecute. Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the inherent power to dismiss an action for a *pro se* plaintiff's failure to prosecute *sua sponte*.[3] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962)("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."); United States ex. rel. Curnin v. Bald Head Island Ltd., 381 Fed.Appx. 286, 287 (4th Cir. 2010)("A district court has inherent authority to dismiss a case for failure to prosecute, and Rule 41(b) 'provides an explicit basis for the sanction.'")(quoting Doyle v. Murray, 938 F.2d 33, 34 (4th Cir. 1991)). Rule 41.1 of the Local Rules provides:

> **Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action. The clerk shall transmit a copy of any order of dismissal to all counsel and

---

[3] Rule 41(b) of the Federal Rules of Civil Procedure provides:
> **(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

11

unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(i) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). The foregoing factors are not meant to be applied as a rigid, formulaic test, but rather serve to assist the Court, along with the particular circumstances of each case, in determining whether dismissal is appropriate. Id. In consideration of the first factor, the Court finds no indication that anyone other than Plaintiff is responsible for his lack of participation concerning the above referenced defendants. Since the filing of his Amended Complaint on December 8, 2022 identifying the forgoing individuals as Defendants, Plaintiff has done absolutely nothing to demonstrate an interest in prosecuting this action against these individuals. Plaintiff failed to take action despite his receipt of the Court's Orders dated December 20, 2022, February 9, 2023, and March 3, 2023. (Document Nos. 32, 65, 75.) The Court notes that there is no indication that forces beyond Plaintiff's control are the cause of his neglect. Thus, the undersigned concludes that Plaintiff is solely responsible for his lack of participation in the instant action.

Consideration of the second factor reveals no prejudice to Nurse Melissa, Officer Zach Priest, CO Scheiling, CO Williamson, CO Cook, Commissioner Jividen, Officer John Doe, CO John Doe, and Officer C-Pod Tower. As explained above, none of the foregoing defendants have been served with process in the above case. With respect to the third factor, the Court will consider

whether Plaintiff has a history of "deliberately proceeding in a dilatory fashion." The record is void of any evidence that Plaintiff has been "deliberately" dilatory. Plaintiff, however, has completely failed to take any action in these proceedings for more than five months. This Court has determined that "only a history of dilatory action" by a plaintiff weighs in favor of dismissal under the third factor. See Hanshaw v. Wells Fargo Bank, N.A., 2014 WL 4063828, * 4 (S.D.W.Va. Aug. 14, 2014)(J. Johnston)("[A]lthough the Court lacks sufficient facts to determine whether Plaintiffs' failure to act is deliberate, in light of the absolute failure to participate in this civil action since the stay was lifted, the Court finds that [the third] factor weighs against Plaintiff.") Accordingly, the undersigned finds the above factor weighs against Plaintiff.

In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be unjust in view of Plaintiff's status as a *pro se* litigant. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the Court's Orders directing a response by Plaintiff.[4] In consideration of all factors, the undersigned concludes that dismissal for failure to prosecute is warranted. Accordingly, the undersigned recommends that this action be dismissed without prejudice[5] unless Plaintiff is able to show good cause for his failure to prosecute.

---

[4] The undersigned notes that it is Plaintiff's obligation to notify the Court of any change of address or other contact information. L.R. Civ. P. 83.5("A *pro se* party must advise the clerk promptly of any changes in name, address, and telephone number.").

[5] Rule 41(b) provides for dismissal with prejudice "[u]nless the dismissal order states otherwise." The undersigned recommends dismissal without prejudice because there is no evidence that Plaintiff acted "deliberately" in his failure to prosecute or that Plaintiff initiated this action in bad faith. *See Hanshaw*, 2014 WL 4063828, at * 5.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaints (Document Nos. 2 and 23) without prejudice, **REMOVE** this the matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 30, 2024.



Omar J. Aboulhosn
United States Magistrate Judge